**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN P. DONDERO, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :  No. 17-cv-04370 |
| | : |
| | : |
| LOWER MILFORD TOWNSHIP; | : |
| ELLEN KOPLIN, individual and in her | : |
| official capacity as Township Manager; | : |
| DONNA L. WRIGHT, individually and in | : |
| her official capacity as a member of the | : |
| Board of Supervisors; MICHAEL W. | : |
| SNOVITCH, individually and in his | : |
| capacity as a member of the Board of | : |
| Supervisors; and JOHN QUIGLEY, | : |
| individually and in his official capacity as | : |
| a member of the Board of Supervisors, | : |
| | : |
| Defendants. | : |
| | : |

**O P I N I O N**
**Defendants' Motion for Summary Judgment, ECF No. 40 - Granted**

**Joseph F. Leeson, Jr.**                                                    **December 23, 2019**
**United States District Judge**

### I.  INTRODUCTION

In this civil rights suit, the Plaintiff, John P. Dondero, was a police officer with Lower

Milford Township (hereinafter "Township"). The Township, citing financial concerns, disbanded

the two-person police department in March of 2016, and, resultantly, Dondero no longer worked

for the Township. Dondero asserts the dissolution of the police department due to financial

concerns was a pretext for the termination of his employment because Dondero supported a

political rival of a Township politician in 2013 and otherwise opposed managerial decisions of the Township.

Dondero asserts various civil rights claims against the Township. He asserts a First Amendment retaliation claim for his speech, substantive and procedural due process claims for the dissolution of the police department and termination of his Pennsylvania Heart and Lung Act benefits, a *Monell*[1] claim for having a policy or custom which enabled misconduct and unconstitutional behavior, civil conspiracy claims pursuant to § 1983, and a claim pursuant to the Pennsylvania Constitution.

The Township filed a motion for summary judgment. Based upon a review of the law, there is no genuine dispute of material fact, and Dondero's claims fail as a matter of law. For the following reasons, the Township's motion for summary judgment is granted.

## II. FACTUAL BACKGROUND

The following facts are undisputed:

Dondero, a resident of the Township since 2002, was a police officer with the Township, beginning in 2006. Pl. Stat. Facts ¶¶ 3, 10; ECF No. 41. Dondero was not part of a bargaining unit as a police officer, but did have an employment contract with the Township. *Id*. at ¶ 9. Dondero stated his intention to form a bargaining unit to the Township in a letter dated June 22, 2015. Def. Stat. Facts ¶ 9; ECF No. 50. At the time of Dondero's hire, the Township was a part-time department with one police officer. Pl. Stat. Facts ¶ 4. As a police officer, Dondero reported directly to the Township Manager. *Id*. at ¶ 5.

---

[1]     *Monell v. Dep't of Soc. Sevs.*, 436 U.S. 658, 691 (1978).

Beginning in 2010, Dondero began to protest decisions made by the Township involving budgetary matters, training protocols, and alleged retaliatory actions by Township employees. Def. Stat. Facts ¶ 12. Ultimately, Dondero supported Gail Hunsberger, the political opponent of Michael Snovitch in the 2013 primary and general election for Township Supervisor. Pl. Stat. Facts ¶ 13. Dondero alleges Ellen Koplin retaliated against him for his political activity by issuing him a negative performance review by grading him "fair" for three out of seven categories. Def. Stat. Facts ¶ 12. The grade of "fair" was the second lowest category Dondero could receive. *Id.*

Dondero was injured in the line of duty on June 3, 2015, while responding to a house fire. Pl. Stat. Facts ¶ 21. Prior to Dondero's injury, the Township's other police officer was also injured in the line of duty, leaving the Township with no police officers to provide coverage as the Township's police department only consisted of two people. *Id.* at ¶ 23. Resultantly, the Pennsylvania State Police provided full time police coverage to the Township at no cost to Township taxpayers. *Id.* Prior to the Township's police officers' injuries, the State Police only assisted the Township when the Township's officers were not on duty. *Id.* at 19. Dondero received disability benefits for his on the job injury under Pennsylvania's Heart and Lung Act. Def. Stat. Facts ¶ 23. After Dondero's injury, Koplin sent him a letter dated January 7, 2016, requesting medical documentation for his injuries. *Id.* at ¶ 12. Dondero alleged this was stigmatizing and worthy of a name clearing hearing as there was an inference of criminal activity in the letter, which triggered gossip. *Id.* Dondero utilized union counsel to communicate and protest decisions made by the Township regarding his disability benefits from June 2015 to March 2016. *Id.* at ¶ 37.

In February 2016, citing financial concerns, the Township Board of Supervisors passed a resolution to disband the Township's police department. *Id*. at ¶ 26. The next month, March 2016, the Township Board of Supervisor's passed Ordinance No. 128 disbanding the Township police department. *Id*. at ¶ 27. Prior to the dissolution of the police department, the State Police had provided full-time coverage to the Township for approximately nine months. Def. Stat. Facts ¶ 18. Dondero protested the dissolution of the police department, stating that it was retaliatory for Dondero's support of a rival political candidate and for expressing concerns related to the department. *Id*. at ¶ 28. The Township cited budgetary concerns, as the Township was paying disability benefits for the other police officer in the Township, who was permanently disabled after a workplace injury, and Heart and Lung Act Benefits for Dondero. *Id*. at ¶ 40, 41. The Township additionally predicted the police department would be operating at a loss within five years. *Id*. at ¶¶ 48, 49.

Dissatisfied with the Township's rationale for the dissolution, and under the impression the dissolution was due to his exercise of his free speech rights, Dondero filed suit against the Township on September 29, 2017. *See* ECF No. 1. Dondero amended his complaint, then the Township moved to dismiss the amended complaint on April 29, 2018. *See* ECF No. 16. This Court, in an Order dated March 13, 2019, dismissed Dondero's amended complaint with an opportunity to amend. *See* ECF No. 18. Dondero filed his second amended complaint on April 15, 2019. *See* ECF No. 19. The second amended complaint states claims for retaliation based upon the First Amendment, violations of substantive due process pursuant to the Fourteenth Amendment, violations of procedural due process pursuant to the Fourteenth Amendment, conspiracy pursuant to § 1983 and § 1985, a *Monell* claim based on policy or custom for permitting misconduct and unconstitutional behavior, and a claim pursuant to the Pennsylvania

Constitution. Discovery followed, and after the conclusion of discovery, the Township moved for summary judgment.

### III.    LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## IV.   ANALYSIS

The ten-count second amended complaint states claims for retaliation based upon the First Amendment for Dondero's political campaigning, his union speech and association, and disagreement with the dissolution of the police department; violations of substantive due process pursuant to the Fourteenth Amendment for the termination of his public employment; violations of procedural due process pursuant to the Fourteenth Amendment because of the termination of his Heart and Lung Act benefits, the dissolution of the police department, and misrepresentation without a name clearing hearing; conspiracy pursuant to § 1983 and § 1985; a *Monell* claim based on policy or custom for permitting misconduct and unconstitutional behavior; and a claim pursuant to the Pennsylvania Constitution. The Township maintains all of Dondero's claims are precluded as a matter of law. For the following reasons, summary judgment is granted in favor of the Township.

### A.  Claims against individual defendants

In all counts, Dondero asserts claims against the individual defendants in their individual and official capacities in addition to the Township. However, Dondero's claims against these individuals in their official capacity are redundant and summary judgment is granted in favor of the individual defendants for claims in their official capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (claims against individual defendants in their official capacities are equivalent to claims against the governmental entity itself, they are redundant and may be dismissed).

To establish a claim against a person in their individual capacity, Dondero must establish each individual defendant acting under color of law, violated his *constitutional or statutory*

*rights*, and caused the alleged injury. *Fennell v. Penchishen*, No. 19-111, 2019 WL 1934877, at *3 (E.D. Pa. April 30, 2019) (emphasis added) (citing *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)). For the reasons stated below, no constitutional or statutory violation occurred, and, therefore, summary judgment is granted in favor of the individual defendants in their individual capacities.

### B.  First Amendment claims

In Counts One and Two, Dondero asserts a First Amendment retaliation claim due to his protesting of the Township's dissolution of the police department, his engagement with union activity, his grieving of the Township's policies and training, and his political campaigning.

For a public employee to state a claim of First Amendment retaliation, "a public employee must show that (1) his [activity] is protected by the First Amendment and (2) the [activity] was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the [activity] had not occurred." *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) (quoting *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014)); *accord Gorum v. Sessoms*, 561 F.3d 179,184 (3d Cir. 2009) (articulating the same elements for other types of First Amendment activity, not just speech).

 "[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) (citation omitted). If Dondero shows that the Township was aware of the protected conduct, then he may use the temporal proximity between that knowledge and the adverse employment action to argue causation. "[A] suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation," *Thomas v.*

*Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (citation omitted), but "[e]ven if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred," *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

That said, in order to show that the protected speech was a substantial or motivating factor in the alleged acts of retaliation, Dondero need not show that the decision was motivated solely by anti-speech animus or even that the illegal animus was the dominant or primary motivation for the retaliation. *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). This is less than a showing that Dondero's protected conduct was the "but for" cause of the challenged actions. *Id*.

In *Lauren v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2007), a case involving retaliation claims under both the First Amendment and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797b, the Third Circuit noted three options for proving a sufficient causal link:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link . . . . In the absence of that proof the plaintiff must show [(3)] that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.

480 F.3d at 267 (internal quotations and citations omitted).

When, as here, public employees speak "pursuant to official duties," they are not acting as a citizen and related communications are not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *see also Garcia v. Newtown Twp.*, 819 F. Supp. 2d 416, 422 (E.D. Pa. 2011) ("[T]he 'proper inquiry' into what are an individual's official duties 'is a

practical one'" such that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform.") (quoting *Gorum*, 561 F.3d at 185).

The standard at summary judgment, requires an employer, to prevail on causation, "must present evidence of such quality that no reasonable juror could conclude that the protected activity was the but-for cause of the termination." *Hill v. City of Scranton*, 411 F.3d 118, 126 n.11 (3d Cir. 2005).

###     i.     Dondero's police department dissolution remarks

Dondero states he was retaliated against because of his opposition to the Township's dissolution of the police department. However, in *Falco v. Zimmer*, 767 Fed. App'x 288, 306 (3d Cir. 2019), the police chief of the City of Hoboken brought a First Amendment retaliation claim based upon, inter alia, his protest of layoffs in the police department. The police chief attempted to assert this conduct was protected speech. The Third Circuit rejected this argument because the police chief "does not allege that his opposition was outside his ordinary job duties and we cannot reasonably infer that it was." *Id.*

Similar to *Falco*, Dondero's speech cannot constitute protected speech. Dondero spoke out against the dissolution of the police department; this conduct is in the scope of his ordinary job duties. *See Garcia*, 819 F. Supp. 2d at 422. As a police officer, Dondero had a vested interest in maintaining the police department. Dondero cannot establish, and a reasonable juror could not conclude, that he established the first element of a First Amendment retaliation claim. Thus, summary judgment is granted in favor of the Township on this claim.

###     ii.     Union speech

Dondero alleges the Township retaliated against him by disbanding the police department because of his speech in support of unionizing and using the union counsel to assist him in his

disability claims. From a period of June 2015 to March 2016 Dondero utilized union counsel to assist in his communications with the Township. Def. Stat. Facts ¶ 27.

Regarding union related speech, the Third Circuit stated, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest . . . are matters more immediately concerned with the self-interest of the speaker as employee." *Parlardy v. Twp. of Millburn*, 906 F.3d 76, 83 (3d Cir. 2018). In this instance, the undisputed evidence showed Dondero utilized union counsel to assist him in his issues with other Township employees and for assistance with his Heart and Lung Act disability payments. These communications are indicative of personal grievances and complaints about conditions of employment which are concerned about the self-interest of Dondero rather than the bargaining unit. This cannot constitute protected speech. Accordingly, Dondero cannot establish the first element of his First Amendment retaliation claim on his union speech claim and summary judgment is granted in favor of the Township

### iii. Union association

Dondero next alleges the Township retaliated against him because he associated with a union by stating his intention to form a union. Specifically, on June 22, 2015, Dondero, through his union counsel, stated his intention to form a bargaining unit. Def. Stat. Facts ¶ 9.

Dondero is correct that union association is protected constitutional speech. *Parlardy*, 906 F.3d at 84. He thus satisfies the first element of his retaliation claim. However, Dondero fails to establish the second element of his retaliation claim because he cannot show his union association was a substantial or motivating factor in the alleged retaliatory action by the Township to disband the police department. While Dondero can establish the Township knew about his intention to form a union, he cannot establish his union association caused the

Township to disband the police department. *See Ambrose*, 303 F.3d at 493; *see also Town of Hammonton*, 351 F.3d at 114.

A reasonable juror could not conclude Dondero satisfied the three-part test for causation set forth in *DeFlaminis*. *See DeFlaminis*, 480 F.3d at 267. As to the first part, "an unusually suggestive temporal proximity," the Township disbanded the police department approximately nine months after Dondero stated his intention to unionize. The passage of nine months is insufficient to show retaliatory motive. *See Cucchi v. Kagel*, No. 17-01597, 2018 WL 1141255, at *3 (E.D. Pa. Aug. 8, 2018) (holding the passage of six weeks between the employee's act and termination not unusually suggestive to show retaliatory motive). Next, Dondero cannot establish the second part, "a pattern of antagonism coupled with timing to establish a causal link" because he cannot establish the timing portion of this option, nine months elapsed between his intention to form a union and the Township's dissolution of the police department. Moreover, during this time period, inquiring about the potential return to duty for Dondero is not antagonistic.

Lastly, Dondero cannot establish the third, and final part, "that from the evidence gleaned from the record as a whole the trier of fact should infer causation." For a period of nine months, the Township's police officers could not service the Township. The period would have been longer but for the Township disbanding the police department in March of 2016. Dondero's timetable for a return to the police department was still unknown in March of 2016. The Township was paying disability benefits to both officers but receiving no police protection from them. During that time period, and after the dissolution, the State Police provided protection at no charge to the Township. Even with a fully staffed police department of two people, the State Police needed to assist to provide protection to the Township. As Dondero's colleague was permanently disabled in the line of duty, there would have been additional State Police assistance

to cover his loss. Furthermore, the Township recognized the hardships with the police department as it would be operating at a loss within five years. Nothing in the record demonstrates or infers anti-union animus on the part of the Township. Accordingly, a reasonable trier of fact would not infer causation as Dondero failed to establish his union association was a substantial or motivating factor in the alleged retaliatory action of disbanding the police department. Therefore, summary judgment is granted in favor of the Township.

      **iv.    Political activity**

For Dondero's last First Amendment retaliation claim, he asserts the Township retaliated against him because he supported the Township Supervisor's political opponent in the 2013 general and primary elections.

Dondero is correct that political activity is protected free speech under the First Amendment and thus satisfies the first element to his retaliation claim. *See Falco*, 767 Fed. App'x at 305. However, Dondero failed to establish the second element as his political activity is approximately three years removed from the Township disbanding the police department. In *Falco*, an additional First Amendment retaliation claim was the police chief's political activity of supporting the opponent of the mayor. *Id*. While the Third Circuit acknowledged the police chief's political activity is protected First Amendment conduct, the alleged retaliation did not occur until three years after the fact and, the "lapse of several years between Falco's first engagement in the activity and Appellees' alleged retaliation fatally attenuates the causal connection between the two." *Id*. at 305, 313. Thus, the Third Circuit ruled Falco failed to satisfy the second element of First Amendment retaliation. *Id*. at 313.

Similar to *Falco* where three years separated the police chief's political activity and the alleged retaliation; in this instance, Dondero's nearly three-year separation between the political

activity and alleged retaliation "fatally attenuates the causal connection." *Id*. Dondero cannot satisfy the second element of his First Amendment retaliation claim. Accordingly, summary judgment is granted in favor of the Township on this claim.

### C.  Substantive due process claim

In Count Three, Dondero asserts an allegation of a substantive due process violation for the termination of his public employment as a police officer. In order to establish a substantive due process claim, "a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. St.*, 523 F.3d 200, 219 (3d Cir. 2008).

"[A] property interest must be constitutionally 'fundamental' in order to implicate substantive due process." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000). However, in *Nicholas*, the Third Circuit explicitly held that public employment is not a fundamental property interest protected by substantive due process. 227 F.3d at 142-43; *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006) ("This court has held explicitly that public employment is not a fundamental right entitled to substantive due process protection."). Accordingly, summary judgment is granted in favor of the Township on Dondero's substantive due process claim for the termination of his public employment.

### D.  Procedural due process claims

In Counts Three and Four, Dondero asserts procedural due process violations for a lack of a name clearing hearing due to alleged misrepresentations stated about him, for the dissolution of the police department, and for the termination of his Heart and Lung Disability benefits.

### i.    Name clearing hearing

Before Dondero could be entitled to a name clearing hearing, he must first establish there were statements made that misrepresented him. Claims premised on misrepresentation alleged to be in violation of due process are analyzed under the "stigma-plus" doctrine. *Hill*, 455 F.3d at 236 (citing *Paul v. Davis*, 424 U.S. 693 (1976)). In this regard it has long been recognized that an individual has a protected interest in his or her reputation. *Id*. at 235 (citing *Wisconsin v. Constantineau*, 400 U.S. 433 (1971)). Nevertheless, "reputation alone is not an interest protected by the Due Process Clause." *Id*. at 236 (quoting *Versarge v. Twp. of Clinton, New Jersey*, 984 F.2d 1359 (3d Cir. 1993) (citing *Paul*, 424 U.S. at 693).  Thus, in order to state "a due process claim for a deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Id*. (citing *Paul* 424 U.S. at 693).

In order to satisfy the stigma element, a public employee must be able to prove that the "stigmatizing statement(s) (1) were made publicly and (2) were false." *Id*. (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1976); *Chabal v. Reagan*, 841 F.2d 1216 (3d Cir. 1988)); *Anderson v. City of Philadelphia*, 845 F.2d 1216, 1222 (3d Cir. 1988). It must be shown that there was harm to one's reputation consisting of the publication of a substantially and materially false statement that infringed upon the "reputation, honor, or integrity of the [individual]." *Brown v. Montgomery Cnty.*, 470 Fed. App'x 87, 91 (3d Cir. 2012).

"[W]hen a 'stigma plus' deprivation occurs in the public employment context, the employee is entitled to a name-clearing hearing." *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 399 (W.D. Pa. 2012). A name-clearing hearing, such as "in an administrative context or in a subsequent criminal trial," will typically fully vindicate the employee's liberty interest. *Bartos v. Commonwealth*, 2011 WL 2456613, at *42 (M.D. Pa. May 25, 2011). Even so, courts "recognize

the theoretical possibility that harm to someone's reputation would not be recompensed fully by a name-clearing hearing." *Otto v. Williams*, 704 Fed. App'x 50, 55-56 (3d Cir. 2017). Although recognizing this theoretical possibility, the Third Circuit "never [has] held that damages are available as a remedy for the harm to the reputational interest in a stigma-plus claim." *Id*. at 55.

Here, Dondero failed to establish his claims on misrepresentation are worthy of a name clearing hearing. Dondero stated the Township disseminated false criminal accusations of him violating the Heart and Lung Act and a negative performance review in 2013. For his performance review, he stated he received a review of "fair" for three of seven categories and this is the second to lowest grade one could receive. However, there is no evidence to state this grade of "fair" is false or otherwise made public. *See* Pl. Aff. ¶¶ 62-66; ECF No. 51-1. Moreover, for Dondero's allegation the Township stated he engaged in criminal activity, he alleged an "inference" from a letter sent by Koplin stated criminal activity. *See* Pl. Dep. at 137:22-137:23; ECF No. 47-1. But, a review of a letter from Koplin to Dondero on January 7, 2016, merely shows she requested medical documentation for his injuries with no accusations of criminal conduct. *See* ECF No. 58-7. Further, when asked who could substantiate his claims that he was accused of criminal conduct through "gossip," Dondero replied, "I don't have names." *See* Pl. Dep. 139-14. Dondero relies upon speculation on his allegation of criminal activity for his disability benefits, as demonstrated by his own statements. Consequently, Dondero failed to establish the elements of the stigma plus test and a name clearing hearing is not necessary. It was imperative for Dondero to establish the elements of the stigma plus test first before a name clearing hearing could be ordered. Therefore, summary judgment is granted in favor of the Township on Dondero's claim of a name clearing hearing due to misrepresentation.

### ii. Disbanding police department

This Court must look to state law in considering whether a party had a property interest in employment. *Elmore v. Clearly*, 399 F.3d 279, 282 (3d Cir. 2005). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source[] such as state law . . . . .'" *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Pennsylvania allows a municipality to engage in a governmental reorganization which has the effect of terminating an employee's position. *See Appeal from Ordinance No. 384 of the Borough of Dale*, 382 A.2d 145, 147 (Pa. Commw. Ct. 1978) (explaining that "[t]here is no provision in the Police Tenure Act which prohibits or limits or in any way applies to the abolition of a police department"). While the Third Circuit does not appear to have considered the issue, other courts refer to this as the "reorganization exception." *See Misek v. City of Chicago*, 783 F.2d 98, 100 (7th Cir. 1986); *McNeil v. City of Pittsburgh*, Civ. No. 94–1276, 1997 U.S. Dist. LEXIS 2034, at *15 (W.D. Pa. Feb. 6, 1997).

Although many courts recognize a municipality's right to reorganize or abolish a department, an employee may challenge the reorganization. *See Misek*, 783 F.2d at 100–01. Allowing such a challenge prevents government officials from merely citing "reorganization" to circumvent the statutory protections enjoyed by certain employees. *Id*. In Pennsylvania, a former employee can challenge a reorganization or abolition of a position or office by showing that the municipality's actions were "a mere pretense or subterfuge." *Twp. of Perkiomen v. Mest*, 522 A.2d 516, 520 (Pa. 1987).

The employee's challenge, however, is not without limit. "State law may impose limitations on the extent to which an employee can challenge an alleged reorganization." *Campana v. City of Greenfield*, 164 F. Supp. 2d 1078, 1093 (E.D. Wis. 2001) (citing *Misek*, 783 F.2d at 101). The Pennsylvania Supreme Court has held that a showing that the reorganization was a pretense or subterfuge is restricted to demonstrating that (1) the position or department was eliminated to circumvent a court order requiring reinstatement of an employee, or (2) the eliminated position or department was subsequently recreated. *Mest*, 522 A.2d at 520.

Dondero asserts the dissolution of the police department was a pretense to retaliate against him for his speech; however, Dondero has failed to establish either the department was eliminated to circumvent a court order requiring reinstatement of an employee, or the eliminated position or department was subsequently recreated. *See id.* The evidence presented shows the Township disbanded the police department as a cost cutting measure because the State Police provided police protection for free. No evidence of a court order or reinstatement is in the record. Accordingly, summary judgment is granted in favor of the Township for Dondero's dissolution due process claim.

### iii. Heart and Lung Act benefits

In Count Four, Dondero asserts the Township violated his procedural due process rights by terminating his Heart and Lung Act benefits without a hearing.

An injured police officer receiving Heart and Lung Act benefits has a constitutionally protected property right in those benefits. *Adams v. Lawrence Twp. Bd. of Supervisors*, 621 A.2d 1119, 1120 (Pa. Commw. Ct. 1993); *Callahan v. Pa. State Police*, 431 A.2d 946, 947 (Pa. 1981). Once it is determined that a police officer qualifies for benefits under the Heart and Lung Act, his disability status cannot be changed from temporary to permanent unless a due process

hearing is afforded. *Camaione v. Borough of Latrobe*, 567 A.2d 638, 640 (Pa. 1989); *see also*

*Cunningham v. Pa. State Police*, 507 A.2d 40 (Pa. 1986). Heart and Lung Act benefits may not

be terminated without conducting a full due process hearing in which the employer establishes

one of two bases of termination: (1) claimant is able to return to work because their disability has

ceased, or (2) claimant's disability is permanent as opposed to only temporary. *Gwinn v. Pa.*

*State Police*, 668 A.2d 611, 613 (Pa. Commw. Ct. 1995); *Williams v. Dep't of Corr.*, 642 A.2d

608, 610 (Pa. Commw. Ct. 1994). The employer has the burden to show by "substantial evidence

a 'reasonable inference' that the [employee's] disability is of lasting or indefinite duration[,]" in

order to establish that the disability is permanent, for purposes of terminating benefits under the

Heart and Lung Act. *Cunningham*, 507 A.2d at 45.

A Pennsylvania Supreme Court case is pertinent on this issue. In *Camaione*, a police

officer, who suffered a work-related injury and could not return to work, began receiving Heart

and Lung Act benefits because he was deemed temporarily incapacitated from performing his

duties. *Camaione*, 523 A.2d at 365. The police officer's benefits under the Heart and Lung Act

were terminated following involuntary retirement. The officer filed a complaint in mandamus

seeking to have his public employer restore his full salary under the provisions of the Heart and

Lung Act. *Id*. at 366. The officer reasoned that he was entitled to his full salary as long as his

disability was of a temporary nature and that he was never afforded a hearing to establish that a

change in his condition had occurred. *Id*.

On appeal, the Pennsylvania Supreme Court held that Heart and Lung Act benefits did

not confer a property right which superseded the public employer's right to regulate its police

complement through involuntary retirement because of economic hardship. *Id*. at 368. Thus, the

police officer was not entitled to a due process hearing prior to the termination of benefits. *Id*. at

369. The Supreme Court explained that the Heart and Lung Act is remedial legislation, which provides compensation for police officers who suffer temporary incapacity or disability in the performance of their work. *Id*. The benefits of full compensation granted by the Heart and Lung Act terminate upon retirement. *Id*. The Heart and Lung Act does no more than assure uninterrupted compensation of salary for current members of a police force while a temporary incapacity exists to ensure that injured police officers are treated equally with actively employed officers. *Id*. In order to receive Heart and Lung Act benefits, the officer must be a member of the police force and temporarily incapacitated from employment. *Id*.

Similar to *Camaione* where the police department was disbanded due to economics and the police officer was terminated without a hearing for his Heart and Lung Act benefits; here, the Township disbanded the police department due to financial reasons and terminated Dondero's Heart and Lung Act benefits without a hearing. As stated in *Camaione*, a hearing regarding the termination of Heart and Lung Act benefit is not necessary in these circumstances. Heart and Lung Act benefits are for current members for a police force who are temporarily incapacitated. Dondero is no longer a member of the Township's police force. Thus, he is not entitled to a hearing regarding the termination of his Heart and Lung Act benefits. Accordingly, summary judgment is granted in favor of the Township on Dondero's procedural due process claim for the termination of his Heart and Lung Act benefits.

### E. Conspiracy claims

In Counts Five, Six, Seven, and Eight, Dondero alleges a conspiracy pursuant to § 1983 regarding the dissolution of the police department for events occurring in October 2015, January 2016, February 2016, and March 2015.

To state a claim of conspiracy under § 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (quoting *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009)).

A §1983 civil conspiracy requires a predicate federal violation. *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 359 (E.D. Pa. 2006). Thus, the Court's determination there is no evidence to support that Dondero's First Amendment retaliation claim, substantive due process claim, and procedural due process claims precludes Dondero from using these claims as the anchor violations for his civil conspiracy claim. *See Watlington on behalf of FCI Schuylkill Afr. Am. Inmates v. Reigel*, 723 Fed. App'x 137, 140 (3d Cir. 2018). Accordingly, summary judgment is granted in favor of the Township for Dondero's conspiracy claims.

### F. *Monell* **claim**

In Count Nine, Dondero asserts a *Monell* claim against the Township on the basis of inadequate policies or customs to prohibit misconduct and unconstitutional behavior.

Under *Monell*, a municipality cannot be held liable on a theory of respondeat superior. *Monell v. Dep't of Soc. Sevs.*, 436 U.S. 658, 691 (1978). Rather, a municipal entity is liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id*. at 694. An "official policy" is created not only by formal rules but also when the "government's authorized decisionmakers" make the "decision to adopt [a] particular course of action." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A "custom" exists when a "widespread practice" is "so permanent and well settled as to

constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citations omitted).

To hold a municipality liable under § 1983 for the conduct of its employees, the plaintiff must satisfy the standard established in *Monell*. *Monell*, 436 U.S. at 691. Under *Monell,* a local government may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," causes the violation of a constitutional right. *Id.* at 694. A *Monell* claim requires a plaintiff to establish "(1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy 'amounted to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of its action." *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).

Absent an underlying constitutional violation by an agent of the municipality, however, the municipality itself may not be held liable under § 1983. *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003). Because Dondero suffered no violation of his constitutional rights, he cannot proceed with his *Monell* claim. *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006). Accordingly, summary judgment is granted in favor of the Township for Dondero's *Monell* claim.

### G. Pennsylvania Constitution claim

In Count Ten, Dondero asserts violations pursuant to the Pennsylvania Constitution. However, "[t]o date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Dillon v. Homeowner's Select*, 957 A.2d 772, 780 n. 11 (Pa. Super. Ct. 2008) (quoting *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006). Accordingly, Dondero's claims under the Pennsylvania Constitution fail as a matter of law. *See Stockham Interests, LLC v. Borough of Morrisville*, No. 08-3431, 2008 WL 4889023, at *10 (E.D. Pa. Nov.12, 2008) (holding that "there is no private cause of action for damages arising from violations of the Pennsylvania Constitution," and granting defendant's request "to deny any monetary relief arising out of violations of the Pennsylvania Constitution") (citations omitted). As summary judgment is granted in favor of the Township, Dondero's request for injunctive relief for this claim is dismissed as moot. *See Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (stating equitable relief, such as a prospective injunction, "is only available so long as there is an actual controversy among the parties")

### V. CONCLUSION

For the reasons discussed above, this Court grants the Township's motion for summary judgment. A separate order follows.

BY THE COURT:

_/s/ Joseph F. Leeson, Jr._
JOSEPH F. LEESON, JR.
United States District Judge